# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# CENTRAL DIVISION

RAYMOND SKATES, ESTATE OF, by )
RICHARD SHINNERS, Personal Representative, )
                                                      )
                 Plaintiff, )
                                                      )
            v.            )    No. 06-4274-CV-C-WAK
                                                      )
THE GUARDIAN LIFE INSURANCE )
COMPANY OF AMERICA, )
                                                      )
                 Defendant. )

## ORDER

     In November 2006, plaintiff brought this action, pursuant to the Employee's Retirement Income Security Act of 1974 (ERISA), as amended, 29 U.S.C. § 1132(a)(f). He was denied long-term disability benefits and his estate seeks judicial review of that denial.[1] The parties do not dispute the main underlying facts, and they have filed cross-motions for summary judgment.

### Summary Judgment Standard

     Fed. R. Civ. P. 56(c) requires "the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The burden on the party moving for summary judgment "is only to demonstrate . . . that the record does not disclose a genuine dispute on a material fact." City of Mt. Pleasant, Iowa v. Associated Elec. Co-Op., 838 F.2d 268, 273 (8th Cir. 1988).

---

[1] Plaintiff Raymond L. Skates filed suit in November 2006. He died on November 10, 2007, and his estate, by its personal representative, Richard Shinners, was substituted as the party plaintiff.

Once the moving party has done so, the burden shifts to the nonmoving party to go beyond his pleadings and show, by affidavit or by "depositions, answers to interrogatories, and admissions on file," that there is a genuine issue of fact to be resolved at trial. Celotex, 477 U.S. at 323. Evidence of a disputed factual issue which is merely colorable or not significantly probative, however, will not prevent entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Summary judgment, however, "is an extreme remedy, to be granted only if no genuine issue exists as to any material fact." Hass v. Weiner, 765 F.2d 123, 124 (8th Cir. 1985). In ruling on a motion for summary judgment, this court must view all facts in a light most favorable to the nonmoving party, and that party must receive the benefit of all reasonable inferences drawn from the facts. Robinson v. Monaghan, 864 F.2d 622, 624 (8th Cir. 1989).

If "there is no genuine issue as to any material fact . . . the moving party is entitled to a judgment as a matter of law," the court must grant summary judgment. Fed. R. Civ. P. 56(c).

## Discussion

Raymond Skates went to work for Bommarito Automotive Group on September 10, 2003, as a full-time car salesman. Bommarito offered a group long-term disability insurance plan through CNA Group Life Assurance Company. The CNA plan stated that an employee could become eligible for the insurance after being employed full time and actively working throughout the waiting period required by the employer. Bommarito's waiting period was sixty days. Once an employee became eligible for and elected to obtain the insurance, it became effective on the first day of the month that fell on or after the eligibility date. Bommarito advised plaintiff that his eligibility date would be December 1, 2003. On November 26, 2003, plaintiff completed and signed the form to obtain the insurance. Documents were forwarded to the plan administrator, who instructed CNA to enroll Skates in the plan with an effective date of December 1, 2003.

On July 1, 2004, the CNA plan terminated and Bommarito offered its employees long-term disability insurance through The Guardian Life Insurance Company of America. Plaintiff

participated in the Guardian plan. Although the companies and policies changed, there was no break in insurance coverage.

Under the Guardian plan, if an insured had not been insured for at least twelve consecutive months, no benefits were payable for disability caused by a pre-existing condition. The twelve consecutive months included time under the Guardian plan alone or combined with a different, immediately preceding plan. A pre-existing condition was defined as an illness or disease, including all related complications and conditions, for which, in the look-back period, the insured had been prescribed drugs by a doctor or had taken prescribed drugs. The look-back period was three months before the effective date of the employee's insurance under the plan.

Plaintiff Skates completed and signed a disability claim form on October 26, 2004, with a disability onset date of October 25, 2004. Guardian processed the form and determined Skates had not been continuously insured for long-term disability benefits for twelve consecutive months before becoming disabled. It then conducted an investigation to determine whether the disability was due to a pre-existing condition, as defined by the plan. The records indicated plaintiff purchased Combivent Inhalers for the three months prior to December 1, 2003, and for the three months prior to July 1, 2004. Plaintiff's treating physician, Dr. Walsh, was contacted by Guardian, and he indicated the inhalers were prescribed to treat plaintiff's COPD. Guardian denied plaintiff benefits on the basis that his disability was due to a pre-existing condition.

Plaintiff appealed. In his appeal letter submitted by counsel, plaintiff told Guardian he had been advised by Bommarito's insurance agent, Jamie Wilhelms from Corporate Benefit[2], that his disability coverage commenced on September 20, 2003. Plaintiff also stated premiums had been deducted from his paycheck which would correspond with coverage beginning on September 20, 2003. If his coverage began on September 20, 2003, he would not have been

---

[2]Corporate Benefit Consultants acted as a third-party administrator and performed certain ministerial functions with regard to the CNA disability plan utilized by Bommarito.

3

subjected to the pre-existing condition provision of the policy. Defendant was not persuaded and the appeal was denied.

In his complaint seeking judicial review, plaintiff asserts he has met all of the requirements for obtaining benefits and the court may apply a de novo standard. Defendant disagrees with the standard of review and contends that plaintiff did not meet the required conditions to be entitled to benefits.

In his complaint, plaintiff asserted that the plan does not provide for defendant to have discretionary authority to evaluate the evidence or interpret the plan, and thus, the court should review this case under a de novo standard. Defendant cites to the provision of the Guardian policy that gives it "discretionary authority to determine eligibility for benefits and to construe the terms of the plan with respect to claims." (Doc. 36-1 at GL000334.) In response, plaintiff acknowledges that provision as it relates to the Guardian policy, but states it does not give defendant discretionary authority to interpret the prior CNA plan. Plaintiff claims the decision to grant or deny benefits is determined by an interpretation of the CNA plan.

In Firestone Tire and Rubber Company v. Bruch, 489 U.S. 101, 115 (1989), the Court addressed the standard of review to be applied in cases requesting judicial review of the denial of benefits. "Consistent with established principles of trust law, we hold that a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."

The parties in this case agree that if a *de novo* standard is not appropriate, the court uses an abuse-of-discretion standard. Clearly, Guardian has discretionary authority with regard to its plan based on the clear language in the plan. Plaintiff's argument that the plan does not give it authority to interpret the CNA plan is not persuasive in the context of this case. Benefits were not payable under the CNA plan because plaintiff was not disabled while covered under that plan, so there was nothing with respect to CNA benefits to interpret. The

4

CNA plan language referencing the effective date of coverage was not ambiguous[3]. Thus, the court will use an abuse-of-discretion standard, although it is likely the result would be the same under either standard.

The court has reviewed the administrative record submitted by the parties. The CNA policy states it becomes effective on the first day of the month following the month the insured becomes eligible. In plaintiff's case, that would have been on December 1, 2003, which was the first day of the month after he had been employed full time with Bommarito for sixty days. December 1, 2003, was listed as the benefit eligibility date on the New Hire Information sheet sent to Corporate Benefit Consultants on September 26, 2003, and as the effective date on the form sent from Corporate Benefit Consultants to CNA on December 1, 2003, asking CNA to enroll Skates. It was also the date in the "Effective Date" box on the enrollment form signed by plaintiff.

Plaintiff's submission of a copy of his commission earnings statement for February 5, 2004, showing a year-to-date disability insurance deduction from another check or checks for $157.76 is not proof that his insurance coverage took effect on September 20, 2003. Even if the premiums were paid for the period between September 20 and December 1, 2003, the payment may have been an error. The court did not find, and the parties have not directed the court to, any language in the CNA plan which even suggests that once an insured became eligible and elected coverage under the plan, the coverage would relate back to an earlier date rather than beginning on the first of the month following the eligibility date.

Although plaintiff signed the enrollment form showing an effective date of December 1, 2003, which corresponds with the plan language, it appears plaintiff may have been mislead by the deduction of premiums for the earlier period, or on representations made by his employer or his employer's insurance agent. He did not, however, submit anything to Guardian which was made a part of the record that indicates CNA considered his effective date of coverage to

---

[3]"If *You* become eligible after the Policy Effective Date, *Your* insurance shall become effective on the first of the month that falls on or next follows the date *You* become eligible." (Doc. 36-2 at GL 000006.)

5

be September 20, 2003, or that an authorized agent represented to plaintiff that his coverage began earlier than December 1, 2003.

Further, it does not appear that Jamie Wilhelms, from Corporate Benefit, put his alleged December 2004 confirmation of the earlier coverage date in writing or otherwise communicated with Guardian on plaintiff's behalf. If CNA or its authorized agent had done so, the outcome of this case might have been different.

It is unfortunate for plaintiff, but the submitted records contain substantial evidence from which Guardian could determine plaintiff's disability insurance with CNA took effect on December 1, 2003, rather than in September or October 2003. Thus, when plaintiff applied for disability benefits on October 26, 2004, Guardian did not abuse its discretion in concluding plaintiff had not had continuous coverage for twelve months and was subject to the pre-existing condition provision.

Under a deferential standard of review, the court considers only the evidence that was before the administrator when the claim was denied to determine whether the denial was reasonable and supported by substantial evidence. Farley v. Arkansas Blue Cross and Blue Shield, 147 F.3d 774, 777 (8th Cir. 1998). If the decision was reasonable and there was substantial evidence, then the court must affirm the plan's determination.

The parties agree that resolution of the case turns on when plaintiff became covered for disability insurance under the CNA plan. That is a fact question under the circumstances of this case. Plaintiff has not identified any ambiguous language in the Guardian plan[4] or directed the court to evidence of any inconsistent interpretations by the defendant. Plaintiff's only evidence to support his claim that the CNA insurance related back to the date in September 2003 are earnings statements indicating premiums were deducted in 2004. Plaintiff did not submit a statement from CNA or his employer identifying the months for which premiums

---

[4]In Documents 38 and 47, plaintiff asserts the eligibility date under the CNA policy is ambiguous because the policy does not define the "waiting period required by the employer," but merely defines "waiting period." In Doc. 43, however, plaintiff admits that "Bommarito's waiting period under the CNA plan was sixty days." (Doc. 43 at 2). Thus, plaintiff admits that he was not misled by the plan's use of the term "waiting period."

6

were paid, interpreting the CNA plan or otherwise refuting the December 2003 effective date. The statement in plaintiff's former counsel's letter of July 14, 2005 (Doc. 36 at GL 000157), regarding oral confirmation of a September 2003 coverage date is not supported by attachments or affidavits which Guardian could have considered.

In his motion for summary judgment, plaintiff has argued for a *de novo* review of the record, asserted that equitable estoppel applies, and claims defendant failed to engage in fair dealing and to act in good faith. The standard-of-review issue has been addressed above.

Plaintiff asserts that equitable estoppel principles can be used in this case because he paid premiums to CNA for September and October 2003, and there was ambiguous language in the CNA policy as to its effective date of coverage. Plaintiff has cited the court to a case where the court suggested receipt of a premium could work an estoppel against the insurance company, but not where the policy language was clear. Sipple v. Reliance Standard Life Ins. Co., 128 F.2d 1261 (8th Cir. 1997). Here, plaintiff asserts the policy language was not clear. For reasons set forth above, the court is not persuaded the policy language was ambiguous or lacked clarity.

Plaintiff also claims defendant failed to engage in fair dealing and good faith. He notes he paid a premium, believed he had disability coverage, and was ultimately told he had become disabled 36 days too soon. He states his premiums were, therefore, wasted. Defendant acknowledges a contractual duty of good faith and fair dealing, but asserts the Plan provided Skates with information that his prior coverage under another plan could be used to determine whether a pre-existing condition exclusion applied. Defendant states it had no reason, prior to the time plaintiff made his claim, to inform plaintiff of the actual date it would use to determine whether a pre-existing condition exclusion applied. In response, plaintiff does not indicate he made inquiries to defendant prior to filing his claim, and the record reflects that his confirmation conversation with Jamie Wilhelms occurred on December 7, 2004. Plaintiff filed his claim on October 26, 2004.

The facts of this case are somewhat disturbing and it is apparent that there was some confusion, miscommunication or error concerning plaintiff's eligibility for disability benefits.

The evidence, however, does not support a finding that the confusion, miscommunication or error was a result of defendant's plan language, actions or communications to plaintiff.

The court finds defendant had discretion to interpret the plan and plaintiff's eligibility for benefits. There is substantial evidence in the administrative record to support a finding that the plan's decision was reasonable and supported by substantial evidence. Accordingly, defendant did not abuse its discretion in denying benefits to plaintiff.

Therefore, it is

ORDERED that defendant's motion of May 30, 2008, for summary judgment is granted. [35] It is further

ORDERED that plaintiff's motion of June 2, 2008, for summary judgment is denied. [37]

Dated this 6th day of October, 2008, at Jefferson City, Missouri.

/s/ *William A. Knox*

WILLIAM A. KNOX
United States Magistrate Judge